# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

| | |
|---|---|
| **MEGAN DAVIS**, an individual, | CIVIL ACTION |
| Plaintiff, | Case No. 2:25-cv-952 |
| v. | Judge: |
| **THE DISTRICT BOARD OF TRUSTEES OF FLORIDA SOUTHWESTERN STATE COLLEGE, FLORIDA**, | Mag. Judge: |
| Defendant. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, MEGAN DAVIS ("DAVIS" or "Plaintiff") by and through undersigned counsel, and states the following for her Complaint:

## CAUSES OF ACTION

1. This is an action brought under Title VII of the Civil Rights Act of 1964 (Title VII) and the Florida Civil Rights Act (FCRA) for (1) retaliation in violation of Title VII, and (2) retaliation in violation of the FCRA.

## PARTIES

2. The Plaintiff, MEGAN DAVIS ("DAVIS") is an individual and a resident of Florida who at all material times resided in Lee County, Florida

1

and was employed by THE DISTRICT BOARD OF TRUSTEES OF FLORIDA SOUTHWESTERN STATE COLLEGE, FLORIDA ("FSW" or "Defendant").

3. Defendant, FSW is a public state college that employed DAVIS in Lee County, Florida.

4. FSW employs in excess of 15 employees and is an employer under Title VII and the FCRA.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this matter under 28 U.S.C. §1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. §1367.

6. Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiff resides in, and the Defendant conducts business in, and some or all of the events giving rise to Plaintiff's claims occurred in Lee County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division under Local Rule 1.04 since the action accrued primarily in Lee County, which is within the Fort Myers Division.

7. DAVIS received her Notice of Right to Sue from United States Equal Employment Opportunity Commission ("EEOC") on August 26, 2025 and this action was filed within the time frame required under the law. (A true and accurate copy of the Notice of Right to Sue is attached as Exhibit 1).

## **GENERAL ALLEGATIONS**

8. DAVIS began her employment with the Defendant in or about August 2019, and was employed as an "EMS Clinical Associate," later promoted to "EMS Program Coordinator," and ultimately to "EMS Program Manager."

9. DAVIS performed her assigned duties in a professional manner and was very well qualified for her position. She consistently performed her job duties at a satisfactory level and received positive feedback and evaluations regarding her performance, including evaluations praising her "outstanding leadership," "commitment to excellence," and noting she "has excelled over the last several months within her role as Program Manager."

10. On or about October 16, 2024, DAVIS contacted the Title IX Coordinator/Equity Officer Angela Snyder to report discrimination she had observed in the workplace.

11. On October 17, 2024, DAVIS met in person with Title IX Coordinator Angela Snyder and reported multiple instances of discrimination against other employees by her supervisor, Director Cassie Billian, including:

(a) Racial harassment against Hispanic employee Leticia Guevara, including Director Billian repeatedly commenting that Guevara "smelled like Spanish food" and "Mexican food," making these

3

      comments in front of students and other employees, causing Guevara to stop eating breakfast near Billian to avoid further harassment;

(b) Hostile treatment and potential surveillance of Leticia Guevara, including Director Billian tracking where Guevara parked her vehicle daily, monitoring when her office lights were on, and making statements that she needed to "track ones like her" when referring to Guevara;

(c) Gender and veteran status discrimination against male employee Andrew Kelly, including Director Billian's statements that Kelly must be guilty of harassment allegations because he is "a male and a veteran" - describing this as "a bad combination" - and making derogatory comments about him having a "military mental break" and being "mentally unhinged" because "men become this way post-military";

(d) Denial of due process based on gender bias, where Director Billian refused to hear Andrew Kelly's side of the story before deciding to terminate him, stating "he is gone. Now or the end of the semester, he is done," and forbidding him from coming to campus or communicating with staff without any investigation or evidence.

12.    When DAVIS questioned Director Billian's decision to terminate the male employee without hearing his side of the story, Billian lashed out at

4

DAVIS, stating that DAVIS felt that way because she was "clearly not a feminist."

13. DAVIS also reported additional discriminatory conduct by Director Billian, including denying Leticia Guevara basic workplace accommodations such as business cards, nameplate on the directory board, and a locking office door for safety, while simultaneously granting these same accommodations to a newly hired non-Hispanic employee; creating a hostile work environment through aggressive questioning during an undisclosed "internal investigation" that targeted employees who worked with DAVIS; and retaliating against employees who sought appropriate workplace safety measures by contacting campus police.

14. DAVIS expressed to the Title IX Coordinator her desire to file a formal complaint but was advised to "hold off" and see if her next meeting with Director Billian would help "smooth things" within the department.

15. Thereafter, the Defendant began a campaign of retaliation against DAVIS, which culminated in her termination on October 23, 2024, just six days after her protected activity.

16. On October 23, 2024, at 8:27 AM, before DAVIS's termination meeting, her access to critical work systems was revoked without notice.

17. On October 23, 2024, DAVIS was called to a meeting with Director Billian and Acting Dean Elizabeth Schott, where she was told only that "your

services are no longer needed." Despite asking multiple times for an explanation, no reason for her termination was provided beyond this statement.

18. DAVIS was then escorted off campus by campus police through a crowd of students, despite no misconduct or security concerns being cited.

19. When another employee (Leticia Guevara) questioned the termination, Director Billian responded hostilely telling her to "mind your own," leading to Guevara's immediate resignation in protest.

20. At all material times, the Defendant was aware of DAVIS's engagement in statutorily protected activity, and consequently, her protected classes, which form the basis for its discriminatory and retaliatory employment practices toward her.

## **COUNT I - VIOLATION OF TITLE VII - RETALIATION**

21. Plaintiff incorporates by reference Paragraphs 1-20 of this Complaint as though fully set forth below.

22. Following DAVIS's objections to race-based and gender-based discrimination, Defendant retaliated by altering the terms and conditions of her employment by terminating DAVIS.

23. Said protected activity was the proximate cause of Defendant's negative employment actions against DAVIS, including termination.

24. Instead of ceasing its disparate treatment, Defendant retaliated against DAVIS via termination.

25. The acts, failures to act, practices and policies of Defendant set forth above constitute retaliation in violation of Title VII.

26. As a direct and proximate result of the violations of Title VII, as referenced and cited herein, DAVIS has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

27. As a direct and proximate result of the violations of Title VII, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, DAVIS is entitled to all relief necessary to make her whole as provided for under Title VII.

28. As a direct and proximate result of Defendant's actions, DAVIS has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

29. DAVIS has exhausted her administrative remedies and this count is timely brought.

**WHEREFORE,** Plaintiff requests trial by jury of all issues so triable as of right, and:

    i.    Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had she maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

    ii.    Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

    iii.    Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

    iv.    Reasonable attorney's fees plus costs;

    v.    Compensatory damages, and;

    vi.    Such other relief as this Court shall deem appropriate.

## COUNT II - VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992 – RETALIATION

30. Plaintiff incorporates by reference Paragraphs 1-20 of this Complaint as though fully set forth below.

31. Following DAVIS's objections to race and gender-based harassment and discrimination, Defendant retaliated by altering the terms and conditions of her employment by terminating DAVIS.

32. Said protected activity was the proximate cause of Defendant's negative employment actions against DAVIS, including termination.

33. Instead of ceasing its disparate treatment, Defendant retaliated against DAVIS via termination.

34. The acts, failures to act, practices and policies of Defendant set forth above constitute retaliation in violation of the FCRA.

35. As a direct and proximate result of the violations of the FCRA, as referenced and cited herein, DAVIS has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

36. As a direct and proximate result of the violations of the FCRA, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, DAVIS is entitled to all relief necessary to make her whole as provided for under the FCRA.

37. As a direct and proximate result of Defendant's actions, DAVIS has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

38. DAVIS has exhausted her administrative remedies and this count is timely brought.

**WHEREFORE,** Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had she maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Reasonable attorney's fees plus costs;

v. Compensatory damages, and;

vi. Such other relief as this Court shall deem appropriate.

## DEMAND FOR JURY TRIAL

**NOW COMES** the Plaintiff, by and through undersigned counsel, and demands a jury trial under Federal Rule of Civil Procedure 38 on all issues triable of right by a jury in this action.

Respectfully submitted,

Dated: October 22, 2025  **/s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Lead Counsel for Plaintiff
YORMAK EMPLOYMENT & DISABILITY LAW
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534

Email: byormak@yormaklaw.com